```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
UNITED STATES OF AMERICA,


             -against-                      MEMORANDUM & ORDER
                                            07-CR-0568(JS)[1]

MICHAEL HILLER and
LEONARD BALDARI,

                    Defendants.
----------------------------------X
APPEARANCES
For the Government: Diane C. Leonardo, Esq.
                    United States Attorney's Office
                    Eastern District of New York
                    610 Federal Plaza
                    Central Islip, New York  11722

For Claimants       Jeffrey S. Dubin, Esq.
Romita & Heaney:    Law Office of Jeffrey S. Dubin
                    464 New York Avenue, Suite 100
                    Huntington, New York  11743
```

SEYBERT, District Judge:

Presently before the Court is the Government's motion to dismiss the ancillary proceeding commenced by claimants Carla Romita and Allison A. Heaney, as Trustees of the New York Oil Heating Insurance Fund (the "Insurance Fund", "Fund" or "Claimant") (hereafter, the "Dismissal Motion"). (See Dismissal Motion, ECF No. 191; see also Support Memo, ECF No. 191-1; Reply, ECF No. 193.) The Insurance Fund opposes the Dismissal Motion.

---

[1] This case, originally assigned to now-retired Honorable Denis R. Hurley, was reassigned to the undersigned on July 13, 2022. (See Case Docket, July 13, 2023 docket entry.)

(See Opp'n, ECF No. 192.) For the reasons that follow, the Dismissal Motion is GRANTED.

## BACKGROUND

The Court presumes the parties' familiarity with the factual background giving rise to the instant matter. For the reader's convenience, only those facts relevant to the current controversy will be addressed.

I.   Factual Background

The instant Dismissal Motion is a by-product of the forfeiture of assets by Defendants Michael Hiller ("Hiller") and Leonard Baldari ("Baldari"; together with Hiller, the "Defendants"), who pled guilty to an embezzlement scheme involving the skimming and subsequent selling of home heating oil, as well as the further conspiracy to launder the proceeds from that scheme. Both the embezzlement and money-laundering conspiracy occurred for the period from on or about January 1, 1990 to July 12, 2007. (See Indictment, ECF No. 1.) The scheme and conspiracy were facilitated through various entities owned and/or controlled by Defendants, including Anchor Transit Corporation ("Anchor"), and Reliable Transit Corporation ("Reliable"). On July 25, 2008: Defendants pled guilty to both the embezzlement and money-laundering conspiracy counts brought against them (see Min. Entry of Plea Change, ECF No. 63); Hiller consented to the entry of a $50-million money judgment against him (see Hiller Forfeiture Order, ECF No.

64[2]); and, in addition to consenting to a $50-million money judgment being entered against him, Baldari also consented to the forfeiture of specific assets, including bank accounts, real properties, and his various corporations involved in the charged crimes (hereafter, the "Specific Forfeited Assets") (see Baldari Forfeiture Order, ECF No. 65). As alleged in the July 2007 Indictment (ECF No. 1), as well as stated in the subject Forfeiture Consent Orders, the Specific Forfeited Assets were proceeds of Defendants' crimes and property involved in their money laundering. (See Hiller Forfeiture Order, first "WHEREAS" clause; Baldari Forfeiture Order, first "WHEREAS" clause.) There were no identified victims of Defendants' scheme, and no restitution was ordered. (See Hiller Judgment, ECF No. 178; Min. Entry of Baldari Sent'g, ECF No. 182; Baldari Judgment, ECF No. 183.)

II. Procedural Background

On March 24, 2022, less than two weeks after judgment was entered against Baldari, the Insurance Fund -- an ERISA fund providing health care benefits to its constituent, including employees of Defendants' companies, i.e., Anchor and Reliable -- caused a Notice of Claim and a Petition for Remission to be filed (hereafter, jointly the "Petition"). (See Notice of Claim, ECF

---

[2] (See also ECF No. 67 (providing the full, five-page July 24, 2008 Consent Order of Forfeiture since the Order filed as ECF No. 64 was missing two pages).)

No. 186; Claim Form, ECF No. 186-2; Petition, ECF No. 186-1, at 4.)  Thereafter, based upon its $503,953.89 Judgments against the Defendants,[3] the Insurance Fund sought a pre-motion conference before Judge Hurley regarding its alleged rights to funds forfeited by Defendants.  (See PMC Letter, ECF No. 188.)  The Insurance Fund argued Defendants never had any right to the unpaid contributions they kept, since the Defendants "were fiduciaries with respect to the unpaid [ERISA] contributions" due to the Insurance Fund and that "[t]he Insurance Fund's legal right to the forfeited property has always been superior to that of the [D]efendants."  (Id. at 2-3.)

---

[3] By way of further background:  In Carla Romita, Lawrence Scuder, John Maniscalco, and Allison A. Heaney, as Trustees of the New York Oil Heating Insurance Fund v. Anchor Tank Lines Corp. and Reliable Transit Corp., No. 09-CV-9997 (S.D.N.Y. 2009), the Insurance Fund sought to recuperate delinquent ERISA contributions for the period from August 1, 2007 through November 30, 2009; ultimately, the Fund was awarded a $503,953.89 judgment against Anchor and Reliable (see ECF No. 183, at 7-8).  Similarly, in Carla Romita and Allison A. Heaney, as Trustees of the New York Oil Heating Insurance Fund v. Anchor Tank Lines, LLC, Tank Acquistiion Company, LLC, Leonard Baldari, and Michael David Hiller, No. 11-CV-9641 (S.D.N.Y. 2011), the Insurance Fund sought to recuperate delinquent ERISA contributions from Defendants, among others, for the period from August 1, 2007 through November 30, 2009, as well as to remedy breaches of fiduciary obligations and prohibited transactions by Baldari and Hiller.  (See Consent Decree, ECF No. 186-3, at 10 (Section II (entitled "The Parties")).)  In that action, the Fund was awarded a $503,953.89 default judgment against Baldari (see id. at 14-15).  The Insurance Fund also entered into a $503,953.89 consent decree with Hiller in the 2011 action, which constituted a final judgment as to Hiller and was "so ordered" by the court.  (See id. at 9-13; see also id. at Section III (Effect of Entry of Decree), and Section VIII (Entry of Final Judgment)).

In opposition, the Government contended "the Insurance Fund is merely a general, unsecured creditor that holds a money judgment and[,] therefore, cannot state an interest superior to that of the [G]overnment's interest to the forfeited assets." (Opp'n Letter, ECF No. 187, at 1.)  Moreover, to the extent the Insurance Fund petitioned for the mitigation of the forfeited funds, according to the Government, this Court lacks the authority to make that determination, since "[s]uch a determination rests solely within the discretion of the Attorney General." (Id.)

Judge Hurley waived his pre-motion conference requirement, instead setting a briefing schedule on the Government's proposed Dismissal Motion.  (See DRH Apr. 11, 2022 Docket Text Order.)  The Dismissal Motion is ripe for adjudication.

## DISCUSSION

I.   Applicable Law

   A.   Section 853

Pursuant to 21 U.S.C. § 853 (hereafter, "Section 853"), among other things, "[a]ny person, other than the defendant, asserting a legal interest in property which has been ordered forfeited to the United States . . . may . . . petition the court for a hearing to adjudicate the validity of his alleged interest in the property."  21 U.S.C. § 853(n)(2).  The filing of such a petition commences an ancillary proceeding.  See id.; see also FED. R. CRIM. P. 32.2(c)(1) ("If, as prescribed by statute, a third party

files a petition asserting an interest in the property to be forfeited, the court must conduct an ancillary proceeding, but no ancillary proceeding is required to the extent that the forfeiture consists of a money judgment."). As relevant here, in an ancillary proceeding, a claimant must establish by a preponderance of the evidence it "has a legal right, title, or interest in the property" that either vested before the defendant's right, title, or interest vested or "was superior to any right, title, or interest of the defendant <u>at the time of the commission of the acts which gave rise to the forfeiture of the property</u>." 21 U.S.C. § 853(n)(6)(A) (emphasis added). However, "[i]n the ancillary proceeding, the court may, on motion, dismiss the petition for lack of standing, for failure to state a claim, or for any other lawful reason." FED. R. CRIM. P. 32.2(c)(1)(A)).

    B.   <u>Motion to Dismiss</u>

An ancillary proceeding closely resembles a civil action and, as such, is generally governed by the same procedures as those set forth in the Federal Rules of Civil Procedure. <u>See, e.g.</u>, <u>Pacheco v. Serendensky</u>, 393 F.3d 348, 352 (2d Cir. 2004) (commenting that civil procedures aid efficient resolution of claims in ancillary proceeding). As stated, <u>supra</u>, in the ancillary proceeding context, the Court may consider a motion to dismiss the ancillary proceeding. <u>See</u> FED. R. CRIM P. 32.2(c)(1)(A) ("[T]he court may, on motion, dismiss the petition for lack of

standing, for failure to state a claim, or for any other lawful reason."); see also United States v. Watts, 786 F.3d 152, 161 (2d Cir. 2015) ("A motion to dismiss a third party petition should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." (internal quotation marks and citation omitted)); Willis Mgmt. (Vt.), Ltd. v. United States, 652 F.3d 236, 241 (2d Cir. 2011) ("[A] motion to dismiss a third-party petition in a forfeiture proceeding prior to discovery or a hearing should be treated like a motion to dismiss a civil complaint under Federal Rule of Civil Procedure 12(b)." (quoting Pacheco, 393 F.3d at 352)). "For purposes of the motion, the facts set forth in the petition are assumed to be true." See FED. R. CRIM P. 32.2(c)(1)(A); see also United States v. Rodriguez-Perez, No. 10-CR-0905, 2019 WL 188400, at *3 (S.D.N.Y. Jan. 11, 2019) ("In deciding a Federal Rule of Criminal Procedure 32.2(c)(1)(A) motion to dismiss, the Court assumes the truth of the facts asserted in the petition and draws all reasonable inferences from those facts in favor of the petitioner." (citing United States v. Egan, 811 F. Supp. 2d 829, 833 (S.D.N.Y. 2011)). "In adjudicating a motion to dismiss, a court may consider only the complaint [or petition], any written instrument attached to the complaint [or petition] as an exhibit, any statements or documents incorporated in it by reference, [any publicly filed document subject to judicial notice,] and any document upon which the complaint heavily relies." Id. (quoting

Geron v. Seyfarth Shaw LLP (In re Thelen LLP), 736 F.3d 213, 219 (2d Cir. 2013); brackets in Rodrigues-Perez). To survive a dismissal motion, "the petitioner need only 'state[] enough facts to state a claim to relief that is plausible on its face." Watts, 786 F.3d at 161 (quoting Willis Mgmt., 652 F.3d at 241-42) (alteration in original).

II. Application

    A. The Petition

In its Petition, the Insurance Fund asserts interest in the following properties (hereafter, the "Subject Assets"):

| Asset ID | Asset Description |
|---|---|
| 07-IRS-001234 | $42,776.00 in U.S. Currency |
| 07-IRS-001235 | North Fork Bank Acct. No. 7826078623 |
| 07-IRS-001237 | Mystic Tank Lines Corporation |
| 07-IRS-001238 | Anchor Transit Corporation |
| 07-IRS-001239 | National Industrial LLC |
| 07-IRS-001240 | Steinway Realty LLC |
| 07-IRS-001241 | 65 South 4th Street Realty Corporation |
| 09-IRS-000002 | $128,242.91 (Balance of Proceeds from Asset Purchase Agreement) |

(See Petition at 3 ("Section II—Asset List); see also Claim at 2 ("Section II—Asset List") (same).) Further, by way of checkboxes, the Insurance Fund indicated it was a "Victim" and "Lienholder" as to each of the Subject Assets. (See id.) The Fund provides no

further explanation or documents supporting its alleged statuses. (See Petition, in toto.) Rather, the Fund explains its interest in the Subject Assets as being based upon the 2011 Anchor/Reliable Judgment awarded in the Southern District of New York, as well as the 2021 Baldari and Hiller Judgments; it also supported its claim with the declaration of its attorney, Jeffrey S. Dubin. (See Petition at 6; see also Claim Form at 3-4; supra note 3; Dubin Decl., ECF No. 186-3.)

As to the Dubin Declaration, among other things, Attorney Dubin declared: the relevant delinquent period regarding ERISA contributions was from August 1, 2007 through November 30, 2009 (hereafter, the "Relevant Time Period"); during the Relevant Time Period and as to Anchor and Reliance, Baldari and Hiller: (1) exercised "authority or control respecting management or disposition" over certain assets of the Fund, within the meaning of 29 U.S.C. § 1002(21)(A), (2) determined whether to use Fund assets to pay other obligations of Anchor and Reliance, and (3) did not remit the required ERISA contributions to the Insurance Fund; and, "[b]y exercising control over assets belonging to the Insurance Fund, . . . Baldari and . . . Hiller became fiduciaries with respect to said assets of the Insurance Fund within the meaning of 29 U.S.C. § 1002(21)(A)." (Dubin Decl., ¶¶ 4, 8-10.) Attorney Dubin further avers that because the Subject Assets "were owned by one or both of the [D]efendants," and "the Insurance Fund

has judgments against both [D]efendants personally, the Insurance Fund is entitled to recover its losses against any or all of the [Subject A]ssets listed." (Id. at ¶ 14.)

Moreover, and specifically as to the Asset Purchase Agreement regarding the sale of Anchor, Attorney Dubin declared said Agreement contemplated a $900,000.00 sale price, which Assistant U.S. Attorney Leonardo acknowledged was the sale price for the company. (See Dubin Decl. ¶ 17 (citing Leonardo Dep. Tr.).) Thus, in addition to the $128,242.91 identified by the Government in its Notice of Forfeiture (see Subject Assets table, supra (same)), the Fund also asserts a claim in the balance of the sales proceeds generated pursuant to the Asset Purchase Agreement. However, "[i]t is unclear from the Forfeiture Notification where the balance of the money from the Asset Purchase Agreement is being held." (See id.)

Other than Attorney's Dubin's Declaration that the Defendants became fiduciaries regarding contributions due the Insurance Fund, in its Petition, the Fund did not allege a constructive trust exists over the Subject Assets. (See Petition, in toto; see also Claim, in toto.)

B. The Government's Position

The Government first argues the Insurance Fund lacks standing to maintain this ancillary proceeding because it is no more than a general creditor of the Defendants. (See Support Memo

at 9.) It highlights the Fund's failure to allege it recorded its Judgments against any of the Subject Assets. (See id.) Moreover, the Fund has not shown it possesses an interest in any particular or specific asset, which is a Section 853(n)(6) statutory requirement. (See id. (citations omitted).) The Government also asserts that the Insurance Fund obtained the Anchor/Reliance Judgment in 2011 and its Judgments against the Defendants in 2021, which was "well after the period of the conspiracy alleged in the Indictment and entry of the consent orders of forfeiture." (Id.) Hence, even if the Fund had filed the Judgments against the Subject Assets, the Government's interest in the Subject Assets "vested at the time of the commission of the crimes, i.e., in 1990[,] well before the alleged failure to make ERISA contributions began in 2007." (Id. at 10 (citing United States v. Speed Joyeros, S.A., 410 F. Supp. 2d 121, 125 (E.D.N.Y. 2006) (finding creditor who obtained a judicial decree affirming his debt and attaching defendant's property may have acquired an interest in the specific asset, but "it comes too late in the day" to recover under Section 853(n)(6)(A), which protects interests in effect when property becomes subject to forfeiture)).)

Next, and assuming arguendo standing, the Government maintains the Insurance Fund cannot show its interest in the Subject Assets is superior to the Government's interest. (See id. at 10.) That is because title to the Subject Assets vested in the

Government immediately upon Defendants' commission of their criminal acts, i.e., the skimming scheme and money-laundering conspiracy, which ran from on or about January 1990 through July 12, 2007. (See id. at 10, 12.) "[A] third-party petitioner can never establish a pre-existing interest under Section 853(n)(6)(A) in proceeds of crime because criminal proceeds come into existence only when a crime occurs." (Id. at 12 (citing United States v. Hooper, 229 F.3d 818, 821-22 (9th Cir. 2000); further citations omitted).) Hence, "[t]he Insurance Fund cannot state a right superior to that of the [G]overnment's interest in the [Subject A]ssets that vested in 1990." (Id. (citing Watts, 786 F.3d at 166-67; further citation omitted).)

    C.    The Insurance Fund's Position

In support of its Opposition, the Insurance Fund has submitted various exhibits, which exhibits were not included with its Petition. (See Dubin Exs. Decl., ECF No. 192-1, ¶ 4 (declaring the exhibits are being submitted "in support of the Insurance Fund's Petition and in opposition to the United States' motion to dismiss the Petition"); see also Exs. A-G, ECF No. 191-2, attached to Dubin Exs. Decl.; cf. Petition.) The Fund's Opposition focuses upon Anchor and the Insurance Fund's 2011 $503,953.89 Judgment against Anchor, which it contends was perfected in May 2011 (previously referred to as the "Anchor/Reliable Judgment" (see supra note 3)). (See Opp'n at 2-3 (regarding claimed perfection,

citing Exs. C, D, E, F, and C.P.L.R. § 5018(b)).)  Yet, other than checking it was a lienholder, the Fund failed to present any documents with its Petition supporting its claim of being a perfected lienholder as to any of the Subject Assets.  (See Petition, in toto.)

By way of factual background, the Insurance Fund further stated that, since January 2011, the Government was aware of the Fund's interest in Anchor and the subsequent sale proceeds of Anchor as a potential source to satisfy the Fund's Anchor Judgment.  (See id. (citing Exs. A, B, G).)  However, according to the Insurance Fund, the Government never responded to the Fund's 2011 inquiries regarding the sale of Anchor.  (See id. at 2-3.)

Regarding this case, the Insurance Fund highlights Baldari "agreed to forfeit to the United States 'all his right, title and interest in Anchor Transit Corp. (the 'Company') and all proceeds traceable thereto . . . .'"  (Id. at 3 (quoting Stip. & Order of Sale, ECF No. 186-3, at 16).)  It then discussed the sale of Anchor pursuant to an Asset Purchase Agreement.  (See id.; see also supra at 10.)  Moreover, the Insurance Fund reiterated its position that the Defendants: "are personally liable for the delinquent ERISA contributions as Anchor was an entity closely held by them"; "exercised control over the activities and operations of Anchor"; and "determined whether of not Anchor paid its obligations to the Insurance Fund".  (Id. (citations omitted).)

The Insurance Fund's sole argument in opposition to the Government's Dismissal Motion is that the delinquent ERISA contributions were trust assets and never the property of the Defendants. (See Opp'n at 5-6.) It relies upon Watts to support its contention that trust assets are not subject to forfeiture. (See id. at 6.) Moreover, without any allegations of fraud made in the Petition or in the supporting declaration, the Fund simply asserts "where property has been taken by fraud from a third party, a constructive trust is imposed over the property and the property is not subject to forfeiture." (Id. (citing United States v. Schwimmer, 968 F.2d 1570, 1574 (2d Cir. 1992)).)

    D.    The Court's Determination

The Dismissal Motion must be granted. First, "[t]o establish statutory standing to challenge a forfeiture order, 'a petitioner must demonstrate that he has a legal interest in the forfeited property,'" which "must be an interest in a particular, specific asset, as opposed to a general interest in the entire forfeited estate or account." United States v. Vilar, No. 05-CR-0621, 2021 WL 4504699, at *3 (S.D.N.Y. Sept. 30, 2021) (first quoting Watts, 786 F.3d at 161 (cleaned up), then quoting United States v. Ribadeneira, 105 F.3d 833, 836 (2d Cir. 1997); internal quotation marks omitted). Here, other than its arguable focus upon the proceeds of the sale of Anchor, the Insurance Fund has wholly failed to demonstrate its particular legal interest in the

other Subject Assets. Indeed, in its Petition, the Insurance Fund contends generally that it "has judgments against both [D]efendants personally" as the basis for seeking recovery "from any of the [D]efendants' assets." (Petition at 6.) There is no indication these Judgments are perfected; rather, at most, the Balari and Hiller Judgments indicate the Fund is a general creditor of the Defendants. As the Government aptly states: "It is well settled that general creditors, like the Insurance Fund, lack standing to assert an interest over specific assets that are subject to forfeiture." (Reply at 3 (citing DSI Assocs. LLC v. United States, 496 F.3d 175, 184 (2d Cir. 2007) ("Without possessing such an interest in a particular, specific asset that is, or is part of, the forfeited property, [the claimant] does not meet the statutory requirements for initiating an ancillary proceeding under [S]ection 853(n)."); further citations omitted)).)

Second, as to the proceeds of the sale of Anchor, even if the Court were to find the Insurance Fund had a particular interest in those sale proceeds, which its Petition does not plausibly allege, the Fund's claim would nonetheless fail since it cannot establish a right in that asset -- or any of the other Subject Assets -- which is superior to the Government's interest. Pursuant to Section 853(c), "[a]ll right, title, and interest in property [subject to criminal forfeiture] vests in the United

States upon the commission of the act giving rise to forfeiture under this section."  Here, it is undisputed that Defendants' skimming scheme and corresponding money-laundering conspiracy ran from on or about January 1990 through July 12, 2007.  In other words, the Government's interest vested in 1990, well before any ERISA contributions were due the Insurance Fund.  As the <u>Watts</u> Court explained:

> a petitioner is unlikely ever to prevail at an ancillary hearing under § 853(n)(6)(A) where the forfeited property consists of 'proceeds' derived from or traceable to a criminal offense. Because, by definition, the proceeds of an offense do not exist before the offense is committed, and because the [G]overnment's interest under the relation-back doctrine immediately vests upon the commission of that offense, any proceeds that ensue from the criminal act belong to the [G]overnment from the moment that they come into existence.

<u>Watts</u>, 786 F.3d at 166-67; <u>see also</u> <u>id.</u> at 166 ("Subsection 853(n)(6)(A) works hand in hand with the 'relation-back' doctrine embodied in § 853(c), which provides that all property subject to forfeiture based on a criminal offense 'vests in the United States upon the commission of the [offense].'" (quoting Section 853(c)); <u>United States v. Kearney</u>, No. 09-CR-0168, 2022 WL 43768, at *3 (E.D.N.Y. Jan. 5, 2022) ("Since forfeitable property vests in the Government 'immediately upon the commission of a criminal act, a third party may prevail under § 853(n)(6)(A) only by establishing that [s]he had a legal interest in the forfeited property <u>before</u>

the underlying crime was committed—that is, before the [G]overnment's interest vested.'" (quoting Watts, 786 F.3d at 166 (cleaned up; emphasis in original)). Thus, even assuming, arguendo, the Insurance Fund had a perfected lien against Anchor which then attached to the sale proceeds of Anchor, "it comes too late in the day" to recover under Section 853(n)(6)(A), which protects the Government's interests, which interest vested when the asset became subject to forfeiture. See Speed Joyeros, 410 F. Supp. 2d at 125.

Finally, to the extent the Insurance Fund baldly contends a constructive trust should be imposed over the Subject Assets (see Opp'n at 6), its argument is unavailing. There are no allegations in the Fund's Petition regarding a purported constructive trust over any of the Subject Assets, and the Fund's contention that the Defendants were fiduciaries does not plausibly allege a basis for imposing a constructive trust. (See Petition, in toto); cf. Section 853(n)(3) (instructing a petition "shall set forth the nature and extent of the petitioner's right, title, or interest in the property, the time and circumstances of the petitioner's acquisition of the right, title, or interest in the property, [and] any additional facts supporting the petitioner's claim"). Rather, as the Government persuasively argues, "[a]ll grounds for recovery must be set forth within the petition and a claimant may not later amend the petition to assert additional

grounds for relief." (Support Memo at 4 (emphasis added) (citing United States v. Soreide, 461 F.3d 1351, 1355 (11th Cir. 2006) (holding claims not asserted in petition were statutorily time-barred); United States v. Strube, 58 F. Supp. 2d 576, 585 (M.D. Pa. 1999) (rejecting third-party claims as untimely since they were not raised in petition, but first asserted in opposition to Government's dismissal motion)).)  Such a situation is analogous to a plaintiff seeking to amend his complaint via arguments raised in opposition to a dismissal motion.  However, "[i]t is well-settled that a plaintiff 'cannot amend [his] complaint by asserting new facts or theories for the first time in opposition to [a] motion to dismiss.'" Peacock v. Suffolk Bus Corp., 100 F. Supp. 3d 225, 231 (E.D.N.Y. 2015) (first quoting K.D. v. White Plains Sch. Dist., 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013) (citing cases); then citing Wright v. Ernst & Young LLP, 152 F.3d 169, 178 (2d Cir. 1998) (rejecting new claim raised for the first time in plaintiff's opposition to dismissal motion)).  Thus, even if the Fund had fleshed out its constructive trust argument, which it presented in little more than a conclusory sentence (see Opp'n at 6),[4] its attempt in its Opposition to put forth this new basis to defeat the Government's forfeiture of the Subject Assets fails.

---

[4]  See, e.g., Syncx LLC v. Kimedics, Inc., No. 23-CV-5070, 2023 WL 5127834, at *16 (S.D.N.Y. Aug. 10, 2023) (finding argument waived where it was raised only in a single conclusory sentence and not fully developed) (citing Zhang v. Gonzales, 426 F.3d 540, 545 n.7

In sum, because the Insurance Fund "has failed to demonstrate that [it] had priority of ownership of the [Subject Assets] at the time of the criminal offense," the Fund cannot plausibly allege a superior interest in the Subject Assets that would defeat the Government's interest. Kearney, 2022 WL 43768, at *4. Hence, there is no basis upon which the Insurance Fund can prevail on its Petition.

## CONCLUSION

Accordingly, for the reasons articulated herein, **IT IS HEREBY ORDERED** the Government's Dismissal Motion (ECF No. 191) is GRANTED.

**SO ORDERED.**

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: November 16, 2023
Central Islip, New York

---

(2d Cir. 2005), and Abdou v. Walker, No. 19-CV-1824, 2022 WL 3334700, at *3 (S.D.N.Y. Aug. 12, 2022) ("Undeveloped arguments are waived because it is not the obligation of the court to research and construct legal arguments open to parties." (internal quotation marks and citation omitted))); (cf. Reply at 7 (arguing, inter alia, the Fund did "not address the elements of a constructive trust" and "except for possibly the existence of a fiduciary relationship between the Insurance Fund and the [D]efendants, [the Fund] cannot establish the remaining elements" of a constructive trust)); see also id. at 8 (asserting the Fund has not shown "that any of the specific assets were purchased with money that was supposed to be directed to the ERISA contributions," and highlighting "the existence of the specific assets listed in the [I]ndictment, returned in July 2007, pre-dated the alleged delinquent contributions that began in August 2007")).